855 A.2d 648

**Robert J. COLONNA, Appellee,**

v.

**Mary M. COLONNA, Appellant.**

Supreme Court of Pennsylvania.

Argued March 3, 2003.

Decided April 29, 2004.

2

William James Helzlsouer, Esq., James Brandon Lieber, Esq., Dravosburg, for Mary M. Colonna.

Chris F. Gillotti, Esq., Pittsburgh, for Robert J. Colonna.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR and LAMB, JJ.

## *OPINION*

Justice NEWMAN.

We granted allocatur in this case to consider whether a trial court may order a parent with primary custody to pay child support to a parent with partial custody. Because we believe that a trial court may enter such an order, we reverse the decision of the Superior Court.

Appellant, Mary M. Colonna (Mother), and Appellee Robert J. Colonna (Father), were married in 1983 and separated in 1996. They obtained a final divorce decree from the Court of Common Pleas of Allegheny County (trial court) on March 19, 1999. At the time of separation, Father sought primary legal and physical custody of the parties' four children, who at the time ranged in age from nine to three years old. Pending the outcome of Father's custody petition, the parties agreed to a temporary order of shared legal and physical custody, pursuant to which the children lived three and one-half days per week with each parent. They later amended the agreement to provide that the children would alternate between parental homes on a weekly basis.

On November 19, 1997, the trial court ordered Father to pay Mother $6,132.00 per month ($73,584.00 per year) in child support and to provide health insurance for Mother and the

children. The trial court also ordered Father to pay the interest portion of the mortgage on the marital home; home-owners, personal property and automobile insurance; private school tuition; and other expenses. On June 18, 1998, the trial court reduced Father's monthly support payment to $5,132.00 per month ($61,584.00 per year) because it determined that Mother's counsel fees had improperly been included as a reasonable need of the children. It further reduced his obligation to $3,132.00 per month ($37,584.00 per year) on August 18, 1998 based on credits for overpayment of Mother's counsel fees.

By Order dated May 4, 1998, the trial court awarded primary legal and physical custody to father during the school year, and primary legal and physical custody to Mother during the summer. Mother has partial custody of one or more of the children on Tuesday and Thursday during the school year, and Father has partial custody of one or more of the children on Tuesday and Thursday during the summer. The parties alternate holidays and weekends throughout the year, and each parent has two weeks with the children for summer vacation.

On July 24, 1998, Father sought to terminate child support on the basis that he was now the children's primary custodian. The trial court permitted him to amend his petition to include additional claims of material and substantial changes in circumstances. A hearing was held before a master in October of 1998, at which time Father introduced his 1997 tax return indicating monthly net income of $16,130.00 ($193,560.00 per year), which was a significant decrease from the monthly net income of $85,942.00 ($1,031,304.00 per year) shown on his 1996 tax return. He presented evidence of living expenses and reasonable needs in the amount of $14,834.23 per month ($178,010.76 per year). The master assessed Mother a net earning capacity of $4,607.00 per month ($55,284.00 per year). Mother presented the same reasonable needs as she did during the 1997 support hearing, namely $28,208.00 per month ($338,496.00 per year) for herself and the children, with $21,106.00 per month ($253,272.00 per year) attributable to the

children. She maintained that her expenses were the same as they had been when the parties shared custody equally.[1] The master concluded that Mother's earning capacity was unchanged, but that Father's monthly net income was now $16,130.00 ($193,560.00 per year).

The master determined that Mother had custody 27% of the year, and Father had custody 73% of the year. She was troubled by the disparities in the parties' income and the fact that Mother has certain fixed expenses incident to her alternating weekend and summer custody. After reviewing the parties' income, the master noted:

At these income levels, a *Melzer* [2] calculation is required. Husband testified that he spends $14,834 per month on the children's reasonable needs. However, there is no way the Master could do a *Melzer* analysis because Wife presented no evidence of her current needs. In fact, she did not know whether they were more, less or the same as they had been in 1997 when the parties had equally shared custody. That being so, the Master can do no more than calculate the presumptive minimum that each would owe to the other with [Father] at $16,130 per month and Mother at $4,600 per month. Rule 1910.16–5(a)(2)[3] requires that the payor's income be set at $8,000 and the payee's income be set at $2,000, but this seems unfair to [Mother] because their actual incomes are more disparate. Further, these children's expenses in Husband's house only exceed the $2,380 per month figure which results from a combined income of only $10,000. Using their actual incomes and the 28.3% for four children at $10,000 combined income results in a child

1. We note that a parent incurs certain fixed costs related to providing the children with a home in which to exercise his or her period of partial custody. Costs such as mortgage or rent payments, insurance, utilities, etc. remain the same whether the children are in a parent's custody or not.

2. *Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991 (1984).

3. The provisions regarding high-income cases were moved from former Pennsylvania Rule of Civil Procedure 1910–16.5 to Pa.R.C.P.1910.16–2(e) in 1998. Furthermore, in 1998, combined monthly net income for a *Melzer* analysis was changed from $10,000.00 (as reflected in the Master's Explanation of Order) to $15,000.00.

support obligation of $5,869 per month, of which [Mother's] share would be $1,291 per month or 22% and [Father's] would be $4,578 per month or 78%. Were [Mother's] obligation to [Father] to be for 12 months, she would owe $15,492 per year. However, [Father] has custody 73% of the time. Therefore, [Mother's] annual obligation would be $11,309.

Were [Father's] obligation to [Mother] to be for 12 months, he would owe $54,936. However, [Mother] has custody 27% of the year. Therefore, [Father's] annual obligation would be $14,833. Offsetting one against the other leaves the support obligation of [Father] to [Mother] of $3,524 per year at $294 per month.

The Master recommends that [Father] pay [Mother] child support of $294 per month while continuing to pay all of the children's expenses as set forth on Exhibit 9.[4]

Master's Explanation of Order, dated October 20, 1998, at 3–4.

Mother and Father both filed exceptions to the master's recommendation. By Order dated April 27, 1999, the trial court sustained Mother's exceptions in part, and ordered Father to pay $810.00 per month ($9,720.00 per year) for support of the children. "This order award was calculated using the presumptive minimum under the new guidelines multiplied by the percentage of Mother's custody time." Trial Court Order dated April 27, 1999. In an Opinion in support of the Order, the trial court stated:

In this proceeding, the hearing officer recommended a child support amount which was offset by [Mother's] obligation to husband for child support. I agreed with the hearing officer's decision that it was not appropriate in this case to terminate support based solely on the custodial situation. However, [Father] had not filed for child support against [Mother] and I found that it was inappropriate to offset any child support due [Mother] by any amount that she would owe [Father]. Therefore, I awarded [Mother] support

---

4. Father's Exhibit 9 is a comprehensive list of expenses including healthcare, food, clothing, leisure activities and summer camp.

based on the guidelines reduced to the percentage of her partial custody time.

Trial Court Opinion, dated June 30, 2002, at 2.

Father appealed to the Superior Court, which reversed in a published Opinion. The Superior Court concluded that for purposes of calculating child support, the custodial parent is the obligee and the non-custodial parent is the obligor. Because the children spend 73% of the time with Father and 27% with Mother, the Superior Court determined that Father, as the obligee, does not owe child support to Mother, who is the obligor. The Superior Court relied upon Pa.R.C.P.1910.16–1, Explanatory Comment B.2., which provides:

Each parent is required to contribute a share of the child's reasonable needs proportional to that parent's share of the combined net incomes. The custodial parent makes these contributions entirely through direct expenditures for food, shelter, clothing, transportation and other reasonable needs. In addition to any direct expenditures on the child's behalf, the non-custodial parent makes contributions through periodic support payments.

Accordingly, the Superior Court held that Mother was not entitled to child support. It concluded:

Where primary physical custody is changed from one parent to the other parent, no valid justification remains for requiring the new custodial parent to continue payments that are intended to be purely for the support, benefit and best interest of the children. Consequently, directing support payments to a non-custodial parent ... serves no purpose for the children after custody changes and would only confer a personal benefit upon the non-custodial parent if the payments were allowed to continue.

*Colonna v. Colonna,* 788 A.2d 430, 442 (Pa.Super.2001).

We adamantly disagree with this conclusion. Like the master and the trial court, we are troubled by the disparity in the parties' incomes and are concerned that the refusal to consider this as a factor when fashioning a support order may be contrary to the best interests of the children. We must

always be mindful of the fact that the support laws work in conjunction with our custody laws. The General Assembly has declared:

> [I]t is the public policy of this Commonwealth, when in the best interest of the child, to assure a reasonable and continuing contact of the child with both parents after a separation or dissolution of the marriage and a sharing of the rights and responsibilities of child rearing by both parents. . . .

23 Pa.C.S. § 5301. Where the parent who does not have primary custody has a less significant income than the custodial parent, it is likely that he or she will not be able to provide an environment that resembles the one in which the children are accustomed to living with the custodial parent. While a downward adjustment in lifestyle is a frequent consequence of divorce that affects both adults and children, we would be remiss in failing to ignore the reality of what happens when children are required to live vastly different lives depending upon which parent has custody on any given day. To expect that quality of the contact between the non-custodial parent and the children will not be negatively impacted by that parent's comparative penury vis-à-vis the custodial parent is not realistic. Issuing a support order that allows such a situation to exist clearly is not in the best interests of the children.[5]

█ Therefore, where the incomes of the parents differ significantly, we believe that it is an abuse of discretion for the trial court to fail to consider whether deviating from the support guidelines is appropriate, even in cases where the result would be to order child support for a parent who is not the primary custodial parent. Pa.R.C.P.1910.16–5(b) provides, in relevant part:

[5]. The temptation for the well-off parent to buy the affection of the children, and the tendency of the children to favor the parent who provides them with a more attractive lifestyle are factors that do not serve the best interests of the children.

In deciding whether to deviate from the amount of support determined by the guidelines, the trier of fact shall consider:

(1) unusual needs and unusual fixed obligation;

(2) other support obligations of the parties;

(3) other income in the household;

(4) ages of the children;

(5) assets of the parties;

(6) medical expenses not covered by insurance;

(7) standard of living of the parties and their children;

\* \* \*

(9) other relevant and appropriate factors, including the best interests of the child or children.

In a case such as the instant matter, the trial court should inquire whether the non-custodial parent has sufficient assets to provide the children with appropriate housing and amenities during his or her period of partial custody. We specifically note that the term "appropriate" does not mean equal to the environment the children enjoy while in the custodial parent's care, nor does it mean "merely adequate." The determination of appropriateness is left to the discretion of the trial court, upon consideration of all relevant circumstances.

Our holding is not limited to cases, such as the instant matter, where the combined net income of the parties exceeds $15,000.00 per month, thus requiring a *Melzer* analysis pursuant to Pa.R.C.P.1910.16–2(e)(2). Because a significant disparity in income may exist where the net income of the parties is less than $15,000.00 per month, there is no objective reason to distinguish *Melzer* cases from other support matters.

In reviewing child support orders, appellate courts employ an abuse of discretion standard. *Ball v. Minnick*, 538 Pa. 441, 648 A.2d 1192 (1994). In the instant matter, the trial court properly began its support determination by calculating the presumptive minimum as set forth in Pa.R.C.P.1910.16–2. We conclude, however, that once the trial court calculated the

presumptive minimum, it abused its discretion by failing to consider the relevant factors set forth in Pa.R.C.P.1910.16–5(b) regarding deviation from the support guidelines. Because we conclude that a parent with primary custody may be ordered to pay child support to a parent with partial custody, we reverse the Order of the Superior Court and remand the case to the trial court for a determination of support for the parent with partial custody.

Justice EAKIN did not participate in the consideration or decision of this case.

Former Justice LAMB did not participate in the decision of this case.

Justice NIGRO files a concurring opinion.

Chief Justice CAPPY files a dissenting opinion in which Mr. Justice CASTILLE joins.

Justice NIGRO, concurring.

I agree with the majority that the "obligor" parent in a child support case may be the custodial parent.[1] Moreover, I agree that in cases such as this where the parties' incomes differ significantly, the trial court should consider whether it is proper to deviate from the presumptive minimum amount of support calculated under Pa. R.C.P.1910.16–2(e)(2) based on the factors in Pa. R.C.P.1910.16–5(b). However, contrary to

---

1. We note that in high income cases like the instant one, the trial court must generally calculate the parents' child support obligations according to the formula set forth by this Court in *Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991 (1984). *See* Pa. R.C.P.1910.16–2(e). The *Melzer* formula in no way presupposes that the non-custodial parent is the "obligor," but rather simply makes each parent responsible for that portion of child-related expenses that corresponds to his or her percentage of the two parents' combined income. Notably, in the instant case, both the domestic relations hearing officer ("DRO") and the trial court determined the parents' support obligations based solely on the presumptive minimum calculation in Pa. R.C.P.1910.16–2(e), reasoning that Mother had not presented any evidence of her reasonable living expenses as is required to perform a *Melzer* analysis. Whether the DRO and trial court erred in failing to request such information and apply the *Melzer* formula is not before the Court as it has not been raised by the parties.

the expressions of the majority and like Chief Justice Cappy, I would caution the trial court against ever resting a decision to deviate on a presumption that a child will favor his or her relationship with the parent who can provide the child with greater material possessions.

Chief Justice CAPPY, dissenting.

Because I believe that a custodial parent should not be obligated to pay child support to a noncustodial parent, I must respectfully dissent.

The majority has declared that where "the incomes of the parents differ significantly, we believe that it is an abuse of discretion for the trial court to fail to consider whether deviating from the support guidelines is appropriate...." Majority slip op. at 7. The majority further decrees that "the trial court should inquire whether the non-custodial parent has sufficient assets to provide the children with appropriate housing and amenities during his or her period of partial custody." Majority slip op. at 8. The majority provides an exceedingly vague definition of "appropriate housing and amenities", stating that "the term 'appropriate' does not mean equal to the environment the children enjoy while in the custodial parent's care, nor does it mean 'merely adequate'." *Id.* Finally, the majority specifically states that this ruling is not limited to those high income cases where the combined net income of the parents exceeds $15,000.00 per month, but rather encompasses all situations where there is a "significant disparity in income". *Id.*

I find this analysis to be troubling for several reasons. First, I can perceive no objective standards within the rule it sets forth. How does a trial court determine what is "appropriate housing and amenities"? Furthermore, what constitutes a "significant disparity" in income? I am concerned that we are providing the trial courts and the practicing bar precious little guidance as to how the majority's rule should be applied.

Second, I find the majority's approach disquieting because I believe it transforms a child support action into a quasi-equitable distribution action. In my view, the majority's new rule is not so much addressing whether the needs of the children are being met (which is a proper subject of a child support action), but rather is focused on augmenting the wealth of the noncustodial parent. While such a focus may be proper in an equitable distribution matter, it has no place in a child support action. A child support action should not be used to jerry-rig a new balance between the respective financial positions of the spouses.

Finally, and most importantly, I am not in accord with the majority's foundational premise concerning the relationships between parents and children. The majority appears to be of the belief that if there is a disparity in income, the parent-child relationship will perforce be corrupted by the wealthier parent's desire to "buy the affection of the children. . . ." Majority op. at 7 n. 5. The majority goes so far as to state that it is unrealistic to believe that a noncustodial parent's relationship with her child will not suffer where the custodial parent is more wealthy than the noncustodial parent. *Id.* at 7. The majority believes we should capitulate to what it perceives to be a social reality, and redistribute the wealth so that the affections of the child will not be alienated due to a parent's inability to provide the child with material advantages comparable to those provided by the wealthier parent.

I am disturbed by this approach. First, I can find no basis in the law for the proposition that a noncustodial spouse must be enabled, via payments from the custodial parent, to provide material advantages and entertain her children in the same lavish fashion as may the custodial parent. This simply has not been the law of this Commonwealth.

Furthermore, I am disturbed by the philosophy underpinning this rule. Unlike the apparent view of the majority, I do not believe that the health of any given parent-child relationship is measured by a parent's ability to provide a surfeit of expensive possessions or experiences for her child. Rather, the parent-child relationship thrives, or withers, based on the

availability of intangibles such as love, attention, and affection. While it may be true that we live in a highly materialistic culture, does this fact stand in contradiction to the timeless realities of parenting? Or, to put it colloquially, *can* money buy love? I think not. And, more importantly, I balk at this court's implication that not only are a child's affections for sale, but also that our judiciary should be in the business of fostering the market for such a "commodity".

For the foregoing reasons, I respectfully dissent.

Justice CASTILLE joins this dissenting opinion.