J-A11034-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| N.L.H. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| T.M.J. | : | |
| Appellant | : | No. 1355 MDA 2016 |

Appeal from the Order Entered July 18, 2016
In the Court of Common Pleas of Adams County
Civil Division at No(s):  07-DR-536

BEFORE:   SHOGAN, MOULTON, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED MAY 23, 2017**

Appellant T.M.J. (hereinafter "Mother") appeals the Order entered in the Court of Common Pleas of Adams County on July 18, 2016, requiring her to pay Appellee N.L.H. (hereinafter "Father") a monthly support payment in the amount of $1,368.36 for the parties' three children.  Following a careful review, we vacate and remand.

The trial court aptly set forth the facts and procedural history herein as follows:

> Father first filed a Complaint for Support on October 1, 2007. The initial support order for the parties was entered on November 15, 2007. Mother was ordered to pay $1,368.36 per month for the support of the parties' three children.
> On September 25, 2015, Father filed a Petition for Modification of an Existing Support Order due to changes to the

_____

[*] Former Justice specially assigned to the Superior Court.

parties' circumstances. Father alleged that Mother was making more money than she had been making when the Order was originally entered, and he stated that the parties' daughter spent the majority of her time with Father. A conference was scheduled for November 2, 2015.

The parties met with the Conference Officer separately, due to scheduling conflicts, and both were accompanied by their respective counsel. The Conference Officer found that Father owned his own home remodeling business and that his earnings had steadily increased since 2012. The Conference Officer found that Mother worked as a doctor for Summit Physician Services and Penn State University. Her gross income from Summit was $165,000 plus bonuses. The Conference Officer used Mother's tax return to calculate her additional income from Penn State, as she did not provide any other proof of this income. The Conference Officer found that Father could not receive support for the parties' daughter because the daughter only spent weekends with Father. Mother requested that Father be held to a higher income of $80,000 but this was denied because Father's income documentation spanning several prior years did not support this. In addition, Father would require additional education to re-enter the computer programing field. The Conference Officer also found that the parties' daughter would be emancipated on June 1, 2016, upon her graduation from high school.

An Allocated Order of Court was entered on December 15, 2015. The Court determined Mother's monthly net income to be $13,311.26 and Father's monthly net income to be $3,932.79. Mother was ordered to pay $1,176.00 per month for the parties' two sons and $2,597.03 in arrears. On January 5, 2016, Mother filed a Demand for Hearing De Novo and raised the following issues:

1. Mother should receive an offset for having majority custody of all three (3) children;
2. Mother should receive an offset due to the extraordinary medical expenses of the children;
3. Mother should receive a larger offset for her school loans;
4. The Hearing Officer may have erred in calculating Father's income.

This matter was scheduled for a hearing on February 10, 2016. On January 19, 2016, Mother filed a Petition for Special Hearing. In her Petition, Mother averred that, due to the complexity of the matter, the hearing should be specially set for

a two-hour time period and the hearing should not be set for at least forty-five days in order to allow Mother ample time to complete discovery. The De Novo Hearing was rescheduled for March 14, 2016 by Order of Court dated January 26, 2016. On February 4, 2016, Mother filed a Petition to Pursue Discovery in a Support Case Pursuant to Pa.R.C.P. 1910.9. On February 5, 2016, this Court granted Mother's request and ordered that Mother may use the discovery rules available in civil actions as set forth in the Pennsylvania Rules of Civil Procedure. On March 9, 2016, Mother filed a Motion for Continuance in order to allow for the exchange of discovery which was granted by Order of Court on March 10, 2016. The De Novo Hearing was rescheduled for May 25, 2016.

At the scheduled Complex De Novo Hearing on May 25, 2016, the Court had a discussion with counsel, after which the Court decided to continue the matter until June 28, 2016. The Court found that there were several outstanding discovery requests and it ordered the parties to turn over documents that had previously been withheld by June 17, 2016. Additionally, the Court ordered that counsel for the parties may submit legal memoranda regarding the issues raised in the de novo appeal.

The Complex De Novo Hearing was ultimately held on June 28, 2016, after which the Court took this matter under advisement. An Order of Court was entered on July 18, 2016. The Court denied the Mother's request for an offset for having majority custody of the parties' daughter and equally shared custody of the parties' two sons. The Court denied Mother's request for a modification of her income based on her having left one of her jobs, as her separation from her employment with Penn State was voluntary. The Court found that Mother's student loans are not an "unusual fixed obligation" pursuant to Pa.R.C.P. 1910.16-5 and denied Mother's request for a downward deviation for the loans, concluding that $830 per month in loans was a manageable portion of her income. The Court found that that Father had gross earnings of $50,117 in 2015 and ordered that this figure would be used to calculate his income for support purposes.

In its July 18, 2016 Order of Court, this Court directed the Domestic Relations Office to issue a two-tiered order. Tier 1, in the amount of $863.00 per month, was effective from September 25, 2016 until June 1, 2016, when the parties' oldest child became emancipated. Tier 2 became effective as of June 2, 2016, and was in the amount of $1,355.00 per month. On July 20, 2016, this Court entered an Order stating its findings that

Father's monthly net income is $3,987.87 and Mother's monthly net income is $11,472.03 and ordering Mother to pay support for the parties' two sons to Father in the amount of $1,490.001 per month. Arrears were set at $1,184.50.

On August 18, 2016, Mother timely filed her Notice of Appeal of the July 18, 2016 Order of Court. Mother timely filed her Statement of Matters Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b) on September 7, 2016.

Trial Court Opinion, filed October 12, 2016 at 1-4.

In her brief, Mother presents the following Statement of the Questions Involved:

1. Did the trial court err as a matter of law and/or abuse its discretion in determining Mother owed support to father for the period of time when the parties' daughter lived solely with her and the parties equally shared custody of the other two (2) minor children, pursuant to Pa.R.C.P. No. 1910.16-4(d)?
2. Did the trial court err as a matter of law and/or abuse its discretion in relying upon Colonna v. Colonna, 581 Pa. 1, 855 A.2d 648 (Pa 2004) when the court was not provided with any evidence of [Father's] need for economic support for the two (2) children who spent only 50% of the time with [Father]?
3. Did the trial court err as a matter of law and/or abuse its discretion in calculating Mother's income to include the income from a second job when Mother's primary job is full-time and her income is more than sufficient to provide support for the children?
4. Did the trial court err as a matter of law and/or abuse its discretion in requiring Mother to work a second job when she is already employed full-time?

Brief for Appellant at 1 (unnecessary capitalization omitted). As Mother's first two issues and the latter two also overlap, we will conduct a two part analysis for ease of discussion.

- 4 -

This Court's standard of review in a child support case is well-settled:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Silver v. Pinskey*, 981 A.2d 284, 291 (Pa.Super. 2009) (*en banc*) (quoting *Mencer v. Ruch*, 928 A.2d 294, 297 (Pa.Super. 2007)). Additionally, "[t]he fact-finder is entitled to weigh the evidence presented and assess its credibility[.]" *Samii v. Samii*, 847 A.2d 691, 697 (Pa.Super. 2004) (quoting *Green v. Green*, 783 A.2d 788, 790 (Pa.Super. 2001), *appeal denied,* 569 Pa. 707, 805 A.2d 524 (2002)).

In most cases, child support is awarded pursuant to a statewide guideline as follows:

**§ 4322. Support guideline**
**(a) Statewide guideline.**—Child and spousal support shall be awarded pursuant to a Statewide guideline as established by general rule by the Supreme Court, so that persons similarly situated shall be treated similarly. The guideline shall be based upon the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support. In determining the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support, the guideline shall place primary emphasis on the net incomes and earning capacities of the parties, with allowable deviations for

> unusual needs, extraordinary expenses and other factors, such as the parties' assets, as warrant special attention. The guideline so developed shall be reviewed at least once every four years.

23 Pa.C.S.A. § 4322(a). Well-established law makes clear both parents are responsible for the support of their children. **Samii**, **supra** at 696 (citation omitted). A parent's ability to provide child support is based upon the parent's earning capacity rather than his or her actual earnings. **Id.** In addition, Pa.R.C.P. 1910.3(b) states that the trier of fact is not to consider who filed the support action or modification when making its determination which party is the obligee or the obligor therein.

Herein, Mother initially contends that in light of Pa.R.C.P. 1910.16-4(d), the trial court erred in its determination that Mother owed support to Father because at the time Father filed his petition to modify the parties' existing child support order, their oldest child lived solely with Mother and the parties shared physical custody of their other two children. Mother further avers the trial court erred in relying upon our Supreme Court's decision in **Colonna v. Colonna** 581 Pa. 1, 855 A.2d 648 (2004) when fashioning its support order.

Pa.R.C.P. 1910.3(b)(1) provides that "[i]n general, the party who has primary custody of the children shall be the obligee of a child support order." Pa.R.C.P. No. 1910.3(b)(1). However, Pa.R.C.P. No. 1910.16-4(d)(2) states that where, as herein, the custody schedule varies, support obligations should be calculated as follows:

- 6 -

(2) *Varied Partial or Shared Custodial Schedules.* When the parties have more than one child and each child spends either (a) different amounts of partial or shared custodial time with the party with the higher income or (b) different amounts of partial custodial time with the party with the lower income, the trier of fact shall add the percentage of time each child spends with that party and divide by the number of children to determine the party's percentage of custodial time. If the average percentage of custodial time the children spend with the party is 40% or more, the provisions of subdivision (c) apply.

Pa.R.C.P. No. 1910.16-4(d)(2).

In applying the aforesaid provision, the trial court correctly calculated Mother's physical custody time with the children for the relevant time period as follows:

[E]ach of the parties' two sons spends 50% of his time with each parent. The parties' daughter spends 100% of her time with Mother. Tr. At 12. Thus, this amounts to a 66.7% average of the time spend [sic] with the obligor[2], a clear majority of the total time the children spend with the parties.

_____
[2]50% + 50%+ 100%= 200%; 200%/3=66.7%.

Trial Court Opinion, filed 10/12/16, at 166-67. Notwithstanding, the trial court rejected Mother's argument that as the parent with the majority of custodial time she did not owe a duty of support to Father. In doing so, the court reasoned that **Colonna**, **supra**, identified an exception to Pa.R.C.P. No. 1910.16-4(d) which applies to the within matter. We disagree.

In **Colonna**, our Supreme Court, in a split decision, concluded "that a parent with primary custody **may** be ordered to pay child support to a

parent with partial custody." **Colonna**, **supra**, 581 Pa. at 9, 855 A.2d at 648, 652 (emphasis added).[1] The Court stated its belief that where the incomes of parents differ significantly, a trial court abuses its discretion when it fails to determine whether a deviation from the support guidelines is appropriate. Under such circumstances, the Court directed trial courts to consider:

> (1) unusual needs and unusual fixed obligation;
> (2) other support obligations of the parties;
> (3) other income in the household;
> (4) ages of the children;
> (5) assets of the parties;
> (6) medical expenses not covered by insurance;
> (7) standard of living of the parties and their children;
> * * *
> (9) other relevant and appropriate factors, including the best interests of the child or children.

**Colonna**, **supra** 581 Pa. at 8, 855 A.2d at 652. The Court went on to state that

> [i]n a case such as the instant matter, the trial court should inquire whether the non-custodial parent has sufficient assets to provide the children with appropriate housing and amenities during his or her period of partial custody. We specifically note that the term "appropriate" does not mean

---

[1] Justice Newman authored the Majority which then Justice Saylor joined. Justice Nigro concurred with the Majority that the obligor parent may also be the custodial parent in a child support case but cautioned the trial court against basing its decision to deviate on a presumption a child will prefer a relationship with the parent who can provide the child with greater material possessions. Chief Justice Cappy authored a dissent which then Justice Castille joined wherein he indicated his belief that a custodial parent should not be obligated to pay child support to the noncustodial parent. Justice Lamb did not participate in the decision.

equal to the environment the children enjoy while in the custodial parent's care, nor does it mean "merely adequate." The determination of appropriateness is left to the discretion of the trial court, **upon consideration of all relevant circumstances**.

*Id*. (emphasis added).

In the matter *sub judice*, contrary to considering the aforementioned factors, the trial court commented on the dearth of evidence in this regard as follows:

> In the instant case, there was little testimony as to Father's ability to provide the children with appropriate housing and amenities. However, Father did state that he is able to meet his expenses "not every month, most months", Tr. At 12, and that he pays for his son J.E.H.'s prescriptions sometimes and for his son A.M.H.'s contacts. Additionally, he provides food and clothing and "whatever they need". Tr. At 12. While this testimony was brief, the [c]ourt finds it persuasive that Father was unable to meet his monthly expenses every month when he was receiving child support in addition to his income.

Trial Court Opinion, filed 10/12/16, at 6-7. In reliance upon **Colonna**, the trial court went on to baldly conclude that because Mother's income is almost three times greater than Father's "the benefit of a support order to supplement Father's income is in the best interest of the children." **Id**. at 7.

In light of the foregoing, we find the trial court abused its discretion in deviating from the support guidelines without first making specific findings as to whether Father as the noncustodial parent had sufficient assets to provide the children with appropriate housing and amenities pursuant to the factors set forth in **Colonna**. Accordingly, we vacate the trial court's order

and remand for an evidentiary hearing to enable the trial court to inquire as to all relevant factors set forth in Pa.R.C.P. 1910.16-5(b) relating to deviation from the support guidelines as our Supreme Court directed in **Colonna**. Upon consideration thereof, the trial court shall make a determination as to whether a deviation from the support guidelines was proper such that Mother owes child support to Father.

In her final two issues, Mother contends the trial court erred when it included income from her second job in its calculation of her income. Appellant explains that as a full-time physician she is required to work sixty (60) hours per week, and she chose to relinquish her additional, part-time job as the director of the clinic at the Penn State Mont Alto Campus in 2015 in order to spend more time with her children. Mother stresses that her job as a physician in itself "is the functional equivalent of one full time and one part time job," and trial court's order "has the effect of requiring Mother to work above and beyond a sixty (60) hour work week to earn minimally more money that won't necessarily benefit the children more than spending time with their mother." Brief for Appellant at 11-13.

At the outset, we note that, generally, there will be no effect on one's support obligation where he or she voluntarily assumes a lower paying job. Pa.R.C.P. No. 1910.16-2(d)(1). Although a person's actual earnings usually reflect her earning capacity, where there is a divergence, the obligation is determined more by earning capacity than actual earnings. **Woskob v.**

***Woskob***, 843 A.2d 1247, 1251 (Pa. Super. 2004).  Earning capacity is the amount that one realistically could earn under the circumstances, not the amount which he or she theoretically could earn. ***Gephart v. Gephart***, 764 A.2d 613, 615 (Pa.Super. 2000). "Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity." Pa.R.C.P.1910.16–2(d)(4). Importantly, the trial court must conduct a full inquiry before making a factual determination about a party's earning capacity. ***See Haselrig v. Haselrig***, 840 A.2d 338 (Pa.Super. 2003).  If a party has willfully failed to maintain appropriate employment, the trier of fact "may impute to that party an income equal to the party's earning capacity." Pa.R.C.P. No. 1910.16-2(d)(4).

While the trial court herein acknowledged Mother had testified that she left her "second job" with Penn State due to her desire to have more time at home with her children, it found that she had not presented adequate evidence of an attempt to mitigate the loss in income or that her voluntary termination if her part-time employment was not done in an effort to reduce her support obligation.  Without support from the record or elaboration, the court expressed its belief that "the timing of Mother's voluntary termination of her second income source [was] suspicious in light of Husband's Petition for Modification of an Existing Support Order."  Trial Court Opinion, filed 10/12/06, at 8.

Mother explained that as a full-time physician at Summit Physician Services, she is required to work sixty (60) hours per week. N.T. 9/9/16, at 23-24. In 2015, Mother received a base salary of $192,743 and an additional $27,743 in incentive bonus payments for working beyond her sixty hour week. Mother already had accumulated incentive bonus earnings at the time of the hearing in an amount of $1,798.06 and intended to accumulate more in the latter part of the year. *Id*. at 27. She earned just $9,070 in 2015 for her work at Penn State. *Id*. at 25.

In deciding whether the trial court erred in its determination that Mother should be imputed with income she had been receiving from her second, part-time job, we are guided by our prior decision in *Haselrig*, *supra*. Therein, this Court was presented with the unique issue of whether an obligor should be imputed with income from a second full-time job he recently left. Significantly, we observed that "[t]heoretically, any person who is obligated to support a spouse and children could work sixteen hour days, with eight hours left in which to sleep. But the question is whether it is realistic and reasonable to do so." *Id*. at 340. We ultimately concluded that

> the law in Pennsylvania clearly requires the trial court [to] conduct a full inquiry before making a factual determination of an obligor's true earning capacity. We bear in mind that the late Honorable Vincent A. Cirillo, former President Judge of the Superior Court, astutely pointed out in his dissent in *Akers*[*v. Akers* 540 A.2d 269 (Pa.Super. 1988)], "A person's ability to pay support should be calculated only from his or her earning capacity at one full-time job.... The court could not order

- 12 -

[Husband] to work a second job initially and it should not be able to force him to continue that employment once he had decided that the second job no longer profits him, financially or otherwise." **Akers**, *supra* at 272.

*Id*. at 341. Finding the record to be devoid of any inquiry into the necessary, relevant factors to establish the obligor's *realistic* earning capacity, this Court vacated the trial court's order and remanded for a full evidentiary hearing to enable the trial court to determine his earning capacity. *Id*.

At the time of the hearing, Mother had been employed with Summit Physician Services for eight years and routinely received additional salary for hours spent above and beyond the sixty-hour full-time requirement. This work history is distinguishable from the type of situation to which the trial court alluded in its opinion wherein one relinquishes lucrative employment in an attempt to avoid a support obligation.

Indeed, without making a full inquiry at the hearing as to Mother's full earning capacity or considering the demanding hourly requirements of Mother's full-time job, the trial court baldly asserted that the timing of her termination of her second income source was "suspicious." In addition, it dismissed as incredible her desire to spend more time with her children as the reason behind her decision to relinquish her part-time employment, which comprised a minimal part of her annual income, and instead found she did so in an effort to reduce her support obligation. Trial Court Opinion, filed 10/12/16, at 8.

As such, we find the trial court's failure to make a finding as to Mother's true earning capacity and determination that Mother needed to present evidence of an attempt to mitigate the loss of her part-time income was an abuse of discretion. We direct the trial court to make such findings upon remand and consider the same when fashioning any support obligation of the parties.

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2017