J-S52024-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| N.A.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| K.F.S. | : | No. 435 MDA 2018 |

Appeal from the Order Entered January 30, 2018
In the Court of Common Pleas of Lancaster County Domestic Relations at
No(s): 2011-01412,
PACSES: 036112476

| | | |
|---|---|---|
| K.F.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| N.A.S. | : | |
| | : | |
| Appellant | : | No. 436 MDA 2018 |

Appeal from the Order Entered January 30, 2018
In the Court of Common Pleas of Lancaster County Domestic Relations at
No(s): 2017-02851,
PACSES: 253116782

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and STRASSBURGER*, J.

MEMORANDUM BY McLAUGHLIN, J.:               **FILED DECEMBER 13, 2018**

N.A.S. ("Mother") appeals from the support order entered on January 30, 2018. Mother alleges an abuse of discretion by the trial court when it assigned her an earning capacity and by ordering Mother to repay an overpayment to K.F.S. ("Father"). We affirm.

_____

* Retired Senior Judge assigned to the Superior Court.

The trial court aptly summarized the factual and procedural history of this case as follows:

On November 3, 2015, following a complex support hearing, the court ordered [Father], to pay $2,326.96 per month in support of the parties' three children. On July 25, 2017, [Father] filed a request for modification, alleging that he now had full legal and physical custody of these children. After being continued once, the Domestic Relations Officer held a support modification conference on September 22, 2017. Following this conference, the court entered an order on September 27, 2017, terminating the support order in the 2011 [c]ase without prejudice, as it determined the children were no longer in the custody of [Mother]. The court further ordered [Mother] to reimburse [Father] the child support overpayment of $9,428.59 within sixty days. [Mother] filed a demand for a hearing on October 17, 2017. After being continued once, this hearing was held on January 25, 2018.

[Father] filed a complaint for support on October 26, 2017. A recommended order was issued on December 6, 2017. This order required [Mother], to pay $390.78/month in support of the parties' three children, as well as $39.00/month on arrears. [Mother] filed a petition of special relief requesting a hearing on the support order and the court granted this request by order dated January 9, 2018.

The court . . . consolidated the two cases [and held a hearing on both cases on January 25, 2018.] It entered an order on January 30, 2018. This order was effective October 26, 2017, and required [Mother] to pay $556.99 in support of the parties' three children and to pay $108 per month on arrears. It further ordered that the $9,428.59 overpayment in the 2011 [c]ase be added to the 2017 [c]ase as an arrearage.

\*\*\*

Prior to 2005, [Mother] worked in a variety of professional positions, earning as much as $80,000 per year. She worked as a clinical auditor and a sales representative for Johnson & Johnson. She has a college education. In 2005[,] she voluntarily left employment in order to care for the couples' children. Since that time, she was a fulltime mother and homemaker. During their

marriage, she started her own business, but this was not a financial success. Following the parties' separation, [Mother] lived in New Jersey and had primary physical custody of the children. Father lived in Lancaster, Pennsylvania, and saw the children for only a few hours on the weekends. [Mother] also attempted to find employment following the parties' separation. She obtained her real estate license in 2013 but was unable to generate income with this certificate. She testified that this was due largely to health issues suffered by one of the parties' children. Although [Mother] testified that she hopes one day to return to work, she presented a Physician's Verification Form completed by Edward M. Franzoni, Ph.D. [Father] did not object to the introduction of the Form. On the Verification Form, Dr. Franzoni noted that [Mother] was currently unable to work due to her adjustment disorder with anxiety. [Mother] admitted that she had no physical limitations preventing her from working, but she suffered mental limitations stemming from the removal of the children from her custody. This occurred in July of 2017.

Trial Court Opinion ("TCO"), filed 4/9/18, at 1-3 (citations to record omitted).

On appeal, Mother raises the following issues:

I.     Did the trial court err by assigning Mother an income when the only evidence regarding her ability to work was her uncontested Doctor's Verification form stating she was not able to earn income?

II.     Did the trial court err in assigning Mother an earning capacity of $15 an hour for 40 hours a week, when no evidence was presented regarding any employment anywhere that Mother she [sic] was qualified to obtain for any number of hours or paying any hourly rate?

III.     Did the trial court err in *sua sponte* requiring Mother to repay Father an overpayment because of the termination of her support where Father did not petition for repayment under the statute?

Mother's Br. at 5.

"Appellate review of support matters is governed by an abuse of discretion standard." ***J.P.D. v. W.E.D.***, 114 A.3d 887, 889 (Pa.Super. 2015)

(quoting **R.K.J. v. S.P.K.**, 77 A.3d 33, 37 (Pa.Super. 2013)). An abuse of discretion is where the judgment is "manifestly unreasonable or the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record." **Hanrahan v. Bakker**, 186 A.3d 958, 966 (Pa. 2018). Absent an abuse of discretion or insufficient evidence to sustain the order, we will not interfere with the court's discretion. **Sirio v. Sirio**, 951 A.2d 1188, 1192 (Pa.Super. 2008).

First, Mother contends that the trial court committed error when it assigned her an earning capacity despite her inability to work. **See** Mother's Br. at 13. Mother argues that the trial court "should have relied on the properly admitted [f]orm of Dr. Franzoni and his determination that Mother's adjustment disorder with anxiety made it so she was currently unable to work." **Id.** at 17.

The Physician's Verification Form submitted into evidence by Mother, with no objection from Father, read that Dr. Franzoni diagnosed Mother with Adjustment Disorder with Anxiety; that it affected her ability to earn income; but that Dr. Franzoni could not determine if Mother had the ability to return to work because "[t]here may be future limitations." **See** Physicians Verification Form. When the court asked Mother how her diagnosis affected her ability to work, Mother replied:

> Your Honor, my children were removed, screaming out of my arms in July. I've been fighting false allegations that are coming from – directly from my ex-husband since July. I am not doing well. So I've been out almost every single night since July, since my kids

were taken, I can barely sleep. During the holidays, I wasn't able to celebrate Christmas. The holidays, I had a very difficult time, you know, walking into stores seeing the holiday decorations. I can't go into the same stores I used to go into, seeing people we used to know asking about the children, everyone asking about the children. There are already tears, and it only helps that I can only be around people who know what's going on so they can help me redirect the conversation.

Notes of Testimony ("N.T."), 1/25/18, at 62. Mother also testified that her disorder was a mental rather than a physical issue. *Id.* at 63. While the court accepted the Physician's Form into evidence, it did not find Mother credible "when she testified that her mental health diagnosis prevented her from finding some form of employment." TCO, at 6.

Since "we are bound by the trial court's credibility determinations," no relief is due. *K.A.R. v. T.G.L.*, 107 A.3d 770, 775 (Pa.Super. 2014). It was within the court's discretion to accept the form into evidence but it was not required to believe that evidence or Mother's testimony. *See Commonwealth v. McClellan*, 178 A.3d 874, 878 (Pa.Super. 2018) (stating fact finder is "free to believe, all, part, or none of the evidence presented when making credibility determinations."). The trial court concluded that despite her disorder, Mother had the ability to obtain employment and therefore determined that it could assign her an earning capacity. *See* TCO, at 6. The trial court's finding that Mother has the present ability to work is supported by the record. Indeed, even Dr. Franzoni stated in the form that he could not determine whether Mother was unable to work. No relief is due.

Next, Mother contends that even if the court did not commit error in finding that she was capable of working, it erred when it assigned her an earning capacity of $15 per hour at 40 hours per week, "a figure pulled from thin air." Mother's Br. at 19. However, the record supports the trial court's contrary conclusion.

"The determination of a parent's ability to provide child support is based upon the parent's earning capacity rather than the parent's actual earnings." *Laws v. Laws*, 758 A.2d 1226, 1229 (Pa.Super. 2000). Earning capacity is "the amount that a person realistically could earn under the circumstances, considering [their] age, health, mental and physical condition, training, and earnings history." *Woskob v. Woskob*, 843 A.2d 1247, 1251 (Pa.Super. 2004).

When calculating Mother's earning capacity, the court based the amount on her education, training, and experience. *See* TCO, at 6-7. Moreover, it factored in that Mother had been out of the workforce for a significant period of time. *Id.* at 7. The Support Hearing record contained evidence regarding Mother's work history and on that basis the trial court assigned her a modest "earning capacity of $15 per hour and forty hours per week which calculates to approximately $30,000 per year. . . ." *Id.* Thus, it assigned her an earning capacity moderately higher than minimum wage but significantly lower than the $80,000 salary she received when she was in the workforce. There was no abuse of discretion by the court.

Last, Mother maintains that the trial court erred by allegedly "*sua sponte* ordering Mother to repay Father an overpayment that existed upon the termination of her support award." Mother's Br. at 20. The procedure for obtaining repayment of an overpayment of support is covered by Pennsylvania Rule of Civil Procedure 1910.19(g)(2), which provides:

> (2) *Order Terminated*. If there is an overpayment in any amount and there is no charging order in effect, within one year of the termination of the charging order, the *former obligor may file a petition* with the domestic relations section seeking recovery of the overpayment. A copy shall be served upon the former obligee as original process. The domestic relations section shall schedule a conference on the petition, which shall be conducted consistent with the rules governing support actions. The domestic relations section shall have the authority to enter an order against the former obligee for the amount of the overpayment in a monthly amount to be determined by the trier of fact after consideration of the former obligee's ability to pay.

Pa.R.C.P. § 1910.19(g)(2) (emphasis added). Accordingly, Rule 1910.19 provides procedural steps to be taken when there is an overpayment including filing a petition.

On November 22, 2017, Mother was ordered to "reimburse [Father] the child support overpayment of $9,428.59 within 60 days." N.T., Support Hearing at 6. Mother's counsel requested that "given the respective incomes" of Mother and Father, the trial court not order Mother to pay the overpayment. *Id.* at 30. In response, Father stated, "I object to this. I mean, it's clearly an overpayment." *Id.* at 30-31. Mother's counsel responded by citing **Colonna**

*v. Colonna*, 855 A.2d 648 (Pa. 2004),[1] in support of his contention that because of the disparity in finances between the parties, Mother should not have to repay Father. *Id.* at 31-32. Father again stated, "It's a clear overpayment." *Id.* at 32. The court concluded that it would review the case law that counsel referenced before making its decision. *Id.* at 34. In its 1925(a) opinion, the trial court acknowledged that while Father did not file a petition, it treated Father's assertion that Mother should repay his overpayment as a "petition," because Father was proceeding *pro se*. TCO, at 7.

We conclude that it was not an abuse of discretion for the court to rectify Father's overpayment. While Father did not file a written petition, the domestic relations department added the overpayment to the case and the court acted within its discretion to remit his accrued support arrearages. *See* N.T., at 6; *see also* Support Order, filed 1/30/18; *see also Portugal v. Portugal*, 798 A.2d 246, 255 (Pa.Super. 2002) (concluding trial court did not abuse its discretion by remedying Husband's overpayment of spousal support with a monthly credit towards child support); *cf. Kessler v. Helmick*, 672 A.2d

---

[1] In **Colonna**, the issue was whether the trial court erred in requiring Father to pay child support even though he had primary custody of the children and Mother had partial custody. **Colonna**, 855 A.2d at 648. The Court held that Father was required to pay child support to Mother even though he had primary custody of the parties children. **Id.** at 654. This case is inapposite to the instant case since here, Father has sole legal and physical custody of the parties' children. **See** N.T., Support Hearing, at 15.

1380, 1384-85 (Pa.Super. 1996) (holding trial court has discretion in setting method of payment for arrearages where court ordered weekly installments rather than lump sum payment of arrearages of child support and alimony *pendente lite*).

Furthermore, Mother has not claimed that she suffered any prejudice from the court's actions. Essentially, Mother argues that since Father did not file a written petition, his failure to do so deprived her of notice that the court was treating Father's oral statement as a petition to repay the overage. However, Mother was on notice of the repayment when the Domestic Relations Section ordered the repayment on November 22, 2017. Moreover, Mother conceded both the overpayment and the amount at the support hearing. N.T., Support Hearing, at 33. She thus sustained no prejudice from the oral motion made by Father. We therefore affirm the order of the trial court.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/13/2018