HUDOCK, Judge:
 

 Stephen Smith (hereinafter “Husband”) appeals from the February 3, 1994 order of court which dismissed his exceptions and affirmed his obligation to provide spousal and child support to Bobbi Brotzman-Smith (hereinafter “Wife”). We affirm.
 

 Husband, age 20, and Wife, age 17, were married on January 15, 1993. Wife was pregnant at the time of the parties’ marriage. After their marriage, the couple lived with Husband’s parents. The parties separated on February 19, 1993, after only four weeks of marriage. Husband filed a complaint in annulment or divorce on April 22, 1993. Wife, who was receiving public assistance from the Department of Public Welfare (DPW), was directed by DPW to file a separate complaint for spousal support, which she did on May 14, 1993. DPW joined Wife’s complaint for spousal support as a party-plaintiff. In her answer to Husband’s complaint for annulment or divorce, which was filed May 19, 1993, and docketed on May 25, 1993, Wife requested alimony pendente lite. Due to complications with Wife’s pregnancy, scheduled conferences with the domestic relations division were delayed and rescheduled. Wife amended her complaint for support after her baby was born on July 20, 1993 to include a claim for child support.
 
 *513
 
 A conference was held on September 10, 1993, where Wife withdrew her complaint for spousal support and elected to proceed with her claims for child support and alimony pendente lite. On December 3,1993, the trial court ordered Husband to pay $162 per week ($55 for spousal support, $80 for child support, and $27 for arrears to DPW). The order was made retroactive to August 2, 1993. The trial court’s order also directed Husband to pay a total of $1,188 in spousal support for the period of May 14, 1993 through December 3, 1993. The order indicated that Husband’s obligations will be considered spousal support for the period from May 14, 1993 until December 3, 1993, which was the period when Wife received public assistance. As of December 3, 1993, Husband’s spousal support would be characterized as alimony pendente lite.
 
 [1]
 
 Husband filed timely exceptions to the support order which were denied following a
 
 de novo
 
 hearing on February 3,1994.
 
 [2]
 
 Husband then filed this appeal.
 

 On appeal Husband raises two issues for our review:
 

 1. WHETHER THE COURT ERRED IN HOLDING [HUSBAND] LIABLE FOR SPOUSAL SUPPORT?
 

 2. WHETHER THE COURT ERRED IN ASSESSING [HUSBAND] AN EARNING CAPACITY FROM MAY 14, 1993, THROUGH SEPTEMBER 9, 1993, EQUAL TO HIS INCOME WITH THE UNITED STATES POST OFFICE?
 

 Husband’s Brief, at p. 3.
 

 Initially, we must address Wife’s claim that we should quash this appeal as interlocutory. Wife claims that since she withdrew her complaint for spousal support on the date of the domestic relations conference, September 10, 1993, the trial court’s award should be labeled alimony pendente lite, not spousal support.
 

 
 *514
 
 We agree with Wife that orders imposing alimony pendente lite are interlocutory and hence, not appealable.
 
 Fried v. Fried,
 
 509 Pa. 89, 501 A.2d 211 (1985). Wife, however, overlooks the fact that DPW joined her complaint for spousal support as a party-plaintiff,' Wife was required to assign her rights under the support complaint to DPW as a condition of receiving public assistance. Recognizing that DPW was entitled to reimbursement from Husband’s support payments, the trial judge characterized Husband’s monthly obligation as “spousal support” for the period of time when Wife received public assistance. Once Wife stopped receiving public assistance, Husband’s monthly obligation was characterized as alimony pendente lite. We do not find error in this delineation between spousal support and alimony pendente lite.
 

 Having concluded that this appeal should not be quashed, we will examine Husband’s claims on the merits. We will only examine the portion of the February 3, 1994 order which relates to Husband’s obligation to provide spousal support.
 
 [3]
 

 Our standard of review for support orders is a narrow one based on an abuse of discretion.
 
 Seman v. Seman,
 
 419 Pa.Super. 20, 21-22, 614 A.2d 1189, 1190 (1992). An abuse of discretion requires more than mere error of judgment, it requires an overriding or misapplication of the law or a manifestly unreasonable exercise of judgment.
 
 Id.
 
 (citation omitted). “Where there is insufficient evidence to support the trial court’s order, the judgment is manifestly unreasonable and must be reversed.”
 
 Myers,
 
 405 Pa.Super. 293, 592 A.2d at 341. Furthermore, the assessment of the credibility of witnesses is within the sole province of the trial court.
 
 Rock v. Rock,
 
 385 Pa.Super. 126, 129-31, 560 A.2d 199, 201 (1989).
 

 Husband first alleges that Wife failed to establish adequate legal cause for voluntarily leaving the marital home, thus defeating her petition for spousal support.
 

 
 *515
 
 Wife has the burden of establishing that Husband’s conduct justified her in leaving the marital home.
 
 See, Rock v. Rock, supra.
 
 A spouse will be denied spousal support if he or she voluntarily withdrew from the marital home without “adequate legal cause.”
 
 Myers,
 
 293, 592 A.2d at 341 (citing,
 
 Martin v. Martin,
 
 282 Pa.Super. 484, 486, 423 A.2d 6, 7 (1980)). This Court has previously explained:
 

 [T]he phrase adequate legal cause for leaving [the marital home] is not subject to exact definition. It must be interpreted based on the facts of each case. A spouse who over a period of time suffers psychological oppression may be harmed as much as a spouse who suffers physical injury. The law must recognize this harm and not force the oppressed spouse to remain in the unhappy environment in order to be entitled to support. On the other hand, the law should not impose on a spouse the duty of support where his or her mate departs the marital residence maliciously or casually on whim or caprice.
 

 Clendenning v. Clendenning,
 
 392 Pa.Super. 33, 38-39, 572 A.2d 18, 21 (1990). The party who voluntarily left the marital residence does not have to establish adequate grounds for divorce in order to sustain a right to spousal support.
 
 Myers,
 
 592 A.2d at 341. However, a “mere allegation that cohabitation is unbearable, unsupported by facts or reasons, is not sufficient.”
 
 Martin,
 
 282 Pa.Super. 486, 423 A.2d at 7 (quoting,
 
 Commonwealth ex rel. Lipschultz v. Lipschultz,
 
 179 Pa.Super. 527, 529-30, 117 A.2d 793, 794 (1955)).
 

 Applying these standards to the present case, we conclude that the trial court did not abuse its discretion when deciding that Wife demonstrated adequate legal reason to leave the marital residence. At the
 
 de novo
 
 hearing held on February 3, 1994, Wife described a fight that she and Husband had two weeks after their marriage. After this dispute, Husband and Wife did not speak to one another for one week. When the parties attempted to resolve the dispute, Husband threw a pair of shoes and a jacket at Wife and told her to “get the hell out of his house.” N.T., 2/3/94, at p. 16. Husband admitted that he told his Wife to leave the home and that he threw her
 
 *516
 
 jacket down the stairs at her. N.T., 2/3/94, at p. 34. Wife explained during direct examination why she left the marital home.
 

 [WIFE’S COUNSEL]: Why did you leave the house? Why did you leave the Smith residence?
 

 [WIFE]: Because he wanted me out.
 

 Q. What did he say to you?
 

 A. He told me to get out before he got home or there was going to be trouble____
 

 N.T., 2/3/94, at p. 12. Wife later explained that she would have been afraid to stay in the marital home and wait until Husband returned from work for fear that he may harm either herself or her baby. N.T., 2/3/94, at p. 24.
 

 . Based on Husband’s threats to “create trouble” if Wife did not leave the marital residence and the fear it generated in Wife; we believe Wife was justified in abandoning the marital home. Husband himself requested that Wife leave his parent’s house. Husband admitted that he called Wife’s mother and told her to get Wife out of his house. N.T., 2/3/94, at p. 39. We cannot conclude that Wife “maliciously or casually on whim or caprice” left the marital residence as Husband asserts.
 
 Clendenning,
 
 132 Pa.Cmwlth. 74, 572 A.2d at 21. Furthermore, on appeal, we will not disturb the trial judge’s assessment of both Wife’s and Husband’s credibility.
 
 Rock,
 
 385 Pa.Super. 129, 560 A.2d at 201. The trial judge, who personally observed the demeanor of the parties, was in a better position to weigh their version of what transpired on the day Wife left the marital residence.
 

 Next, we will address Husband’s contention that the trial court erred in assessing him an income of $8.00 per hour from May 14, 1993 until September 10, 1993. On September 13, 1993, Husband began working forty hours per week with the United States Post Office making $8.00 per hour. Prior to this time, Husband worked at Youell’s Oyster House. Husband alleges that he only made $5.00 per hour working at menial labor jobs during this time frame and that the trial court should have taken further steps to determine his actual earnings prior to September 13, 1993.
 

 
 *517
 
 So long as the amount of support is “fair, non-confiscatory, and attendant to the circumstances of the parties,” the trial court’s order of support will be upheld.
 
 Myers,
 
 405 Pa.Super. 296, 592 A.2d at 342. The trial court must consider the spouses’ income, potential earning capacity, and other property and financial resources when calculating a support obligation.
 
 Id.
 
 at 343 (citing
 
 Goodman v. Goodman,
 
 375 Pa.Super. 504, 508, 544 A.2d 1033, 1035 (1988)). “Earning capacity” is defined as “that amount which the person could realistically earn under the circumstances, considering his or her age, health, mental and physical condition and training.”
 
 Goodman,
 
 507, 544 A.2d at 1035.
 

 At the
 
 de novo
 
 hearing, the hearing officer explained how she arrived at Husband’s earning capacity for the period May 14, 1993 through September 13, 1993, which was used in the calculation of Husband’s monthly support obligation. Her testimony was as follows:
 

 [HEARING OFFICER]: It was more or less an assessment. What he’s making now is $8 an hour, which is I think a fair assessment.
 

 THE COURT: So he was — prior to him going on the books, you assessed him an income?
 

 [HEARING OFFICER]: He was working at [Youell’s] Oyster House and different things under the table, so there was no verification of what his wages were. At the time of the conference, he had just started that job, so I assessed him that income.
 

 N.T., 2/3/94, at p. 10.
 

 We do not find that the hearing officer’s estimate, adopted by the trial court, of $8.00 per hour for Husband’s earning capacity from May 14, 1993 until September 10, 1993 was unfair or confiscatory. The hearing officer explained that Husband was receiving income from various odd jobs, possibly “under the table” without a deduction of taxes. Husband failed to provide the hearing officer or trial court with any additional evidence or verification to support his allegation that he only made $5.00 per hour. Husband could have
 
 *518
 
 introduced pay stubs and W-2 tax forms to verify his actual earnings. Even without evidence verifying Husband’s actual wages during the months prior to his employment with the post office, the hearing officer could properly estimate Husband’s earning capacity at $8.00 per hour, based on all pertinent factors such as age, health, education, and training.
 

 Order affirmed.
 

 [1]
 

 . As of December 3, 1993, Wife was no longer receiving public welfare.
 

 [2]
 

 . We note that the trial court’s order of February 3, 1994 does not specifically reaffirm the temporary order of support entered on December 3, 1993. However, it is clear from the record that when the trial court dismissed Husband’s exceptions and found him liable for support, it was reaffirming the temporary support order.
 

 [3]
 

 . Additionally, we note that Husband's appeal is proper since the order awarding spousal support was entered in a support proceeding instituted by Wife filing a separate complaint for spousal support.
 
 Myers v. Myers,
 
 405 Pa.Super. 290, 293-94, 592 A.2d 339, 341 (1991);
 
 see also, Ritter v. Ritter,
 
 359 Pa.Super. 12, 16 n. 2, 518 A.2d 319, 321 n. 2 (1986).