Scarlet HASELRIG, Appellee,

v.

Michael W. HASELRIG, Appellant

Superior Court of Pennsylvania.

Argued Aug. 26, 2003.
Filed Dec. 18, 2003.

Joseph J. Chester, Pittsburgh, for appellant.

Franklin L. Robinson, Jr., Pittsburgh, for appellee.

Before: JOHNSON, HUDOCK and ORIE MELVIN, JJ.

OPINION BY ORIE MELVIN, J.:

¶ 1 Appellant, Michael W. Haselrig (Husband), appeals from an order entered in Allegheny County Common Pleas Court Family Division dismissing his exceptions to a hearing officer's recommendation and entering a final order of support. For the reasons that follow, we vacate that order and remand for further proceedings.

¶ 2 Husband and Appellee, Scarlet Haselrig (Wife), were married on May 13, 2000 and separated twenty-three months later on April 30, 2002. Although no divorce action was filed and no children were born of the marriage, Wife filed for support on May 2, 2002. A hearing was held before a domestic relations officer on Octo-

ber 28, 2002, at which both parties appeared and offered testimony.

¶ 3 The trial court adopted the hearing officer's findings that at the time of the hearing, Husband had four children from three other relationships and had outstanding support orders for them totaling $590 per month and $35 on arrears. Trial Court Opinion, 2/18/03, at 1. Wife was employed at Jewish and Family Services earning a net monthly income of $1552. *Id.* Husband was employed at UPMC where he received net monthly income of $2800. *Id.* In addition, he had a second part-time job where he worked twelve hours per week earning $17 per hour. *Id.*

¶ 4 The dispute here arose from the fact that from January 1, 2001 through May 30, 2002, Husband was working a second full-time job at Symphony Mobile. *Id.* Husband testified that he worked this second full-time job to help pay expenses, including his other child support orders. *Id.* He initially took this job 8½ months into the marriage and quit nearly one month after the parties separated and Wife filed for support. The trial court also adopted the hearing officer's findings that Husband's combined W–2's for both full-time jobs in 2001 was $87,000. *Id.*

¶ 5 According to the trial court:

> The hearing officer set Husband's net monthly income $5415 based on his W–2's for the previous year and the testimony of the parties. This income is based on Husband working two full-time jobs. Using net income of $5415, the hearing officer calculated Husband's guideline child support orders to be $2454 per month, which would entitle Wife to spousal support of $563. Using Husband's actual child support orders with his prior income, Wife would be entitled to $1073. The hearing officer recommended a spousal support pay-

ment of $675 plus $50 on arrears of $2700.

*Id.* at 2. The trial court then adopted the hearing officer's recommendation, denied Husbands' exceptions and entered a final order of support. This appeal follows.

¶ 6 Husband sets forth his issues on appeal as follows:

1. Whether the lower court erred in finding that Appellant had income from both one full-time job and also earning capacity from a second full-time job?

2. Whether the lower court erred in applying the multi-family analysis required by Pa.R.Civ.P. 1910.16–7 when the other cases were not reviewed at the same time?

Appellant's brief at 1–2.

¶ 7 Succinctly put, Husband's first argument is that it is manifestly unfair to attribute an earning capacity to him for more than one full-time job. Secondly, he claims that the hearing officer performed the multi-family analysis with either no data or with presumed data.

¶ 8 Our standard of review of an order of spousal support is narrow and well settled.

> We may reverse a support order only where the order cannot be sustained on any valid ground. Absent an abuse of discretion or insufficient evidence to sustain the support order, this court will not interfere with the broad discretion afforded the trial court... Where there is insufficient evidence to support the trial court's order, the judgment is manifestly unreasonable and must be reversed.

*Strawn v. Strawn,* 444 Pa.Super. 390, 664 A.2d 129, 131 (1995) (citing *McKolanis v. McKolanis,* 435 Pa.Super. 103, 644 A.2d 1256 (1994)). In evaluating a spouse's support obligation, the trial court must consid-

er the spouses' income, potential earning capacity, and other property and financial resources. *Brotzman–Smith v. Smith,* 437 Pa.Super. 509, 650 A.2d 471, 475 (1994). We bear in mind that, in addition, the amount of the award must be fair, non-confiscatory, and attendant to the circumstances of the parties. *Id.*

¶ 9 Husband presents a unique situation. Because he took on a second full-time job for eighteen months of this twenty-three month marriage, the hearing officer determined Husband's earning capacity as if he should be required to continue to maintain a work schedule of eighty hours a week. The hearing officer came to this conclusion based solely on Husband's W–2's for both full-time jobs in 2001. However, "[a] person's earning capacity is defined not as an amount which the person could theoretically earn, but as that amount which the person could realistically earn under the circumstances, considering his or her age, health, mental and physical condition and training." *Strawn v. Strawn,* 444 Pa.Super. 390, 664 A.2d 129, 132 (1995) (internal quotation marks omitted). The hearing officer made no inquiry whatsoever into Appellant's earning capacity other than to accept a figure based on Husband's W–2's.

¶ 10 In reaching its decision, the trial court relied upon *Akers v. Akers,* 373 Pa.Super. 1, 540 A.2d 269 (1988). In that case, Mrs. Akers successfully sought an increase in child support from her ex-husband based on what she argued to be concealed income from a second job. Initially, the hearing officer recommended an increase, and appellant filed exceptions. Mr. Akers' exceptions were dismissed, and a final order was entered. Mr. Akers did not appeal. Later, he petitioned for a reduction on the grounds that he had been forced to quit his second job due to health concerns. Shortly thereafter he was laid off from his primary job, and he filed a second petition to modify. These petitions were consolidated for hearing, and the order was somewhat reduced. However, Mr. Akers' exceptions were denied, and a final order adopting the hearing officer's recommendations was entered. As noted by the majority in *Akers,* the issue of whether Mr. Akers' second job warranted an increase in support was not before the Court because Mr. Akers did not appeal that order. *Id.* at 270, fn. 1. Instead the issue was whether the trial court abused its discretion in imputing an earning capacity rather than basing the support order on actual income. In affirming the trial court in *Akers,* we held the general rule is that it is the earning capacity, not the actual earnings, which is the determinative factor in ascertaining the ability to pay support.

¶ 11 Here, unlike in *Akers,* the issue of whether an obligor should be imputed with income from a second full-time job he recently left is squarely before us. Theoretically, any person who is obligated to support a spouse and children could work sixteen hour days, with eight hours left in which to sleep. But the question is whether it is realistic and reasonable to do so. Given the dearth of appellate discussion in Pennsylvania on the subject, we believe it is helpful to look for guidance in another jurisdiction that has addressed the situation where the obligor worked two full-time jobs and determined what effect that should have on calculating earning capacity.

¶ 12 For example, in *McNutt v. McNutt,* 203 Ariz. 28, 49 P.3d 300 (Ariz.App.2002), the Arizona Court of Appeals vacated a county court order of support based on the 80–hour workweek father once worked. In calculating father's gross income for child support purposes, the trial court imputed additional income to father based on his previous eighty-hour workweek over

and above the income father earned from his current sixty-four hour workweek. Much like the present case, father began working eighty-hour weeks to enable the parties to purchase a home, but when the parties separated father attempted to reduce his workload to a sixty-four hour workweeks. He testified at trial that he wanted to further reduce his hours to increase the quality time he spent with the parties' only child. When the trial court imputed the wages earned from the eighty-hour workweek, father appealed. The appellate court in this Arizona case was asked to define "full earning capacity" and decide whether father was working below "full earning capacity" because he was no longer working the eighty-hour schedule he once had. Recognizing that it is generally not expected that a parent will earn income greater than what would be earned from one full-time job, when a person takes on a second job, the question that must be answered is whether they can be compelled to continue those hours. The Arizona appellate court held that the determination of what constitutes a reasonable work regimen depends upon all relevant circumstances, including the choice of job availability within a particular occupation, working hours, and working conditions. *Id.* at 33, 49 P.3d at 306 (internal quotes and citations omitted). Although the Arizona court rejected father's contention that full-time employment must be limited to forty-hour workweeks, it also recognized that the trial court abused its discretion by finding that father's full earning capacity was the eighty hours per week he once worked and that he was underemployed at sixty-four hours.

¶ 13 Although there is no case more on point in our jurisdiction, the law in Pennsylvania clearly requires the trial court conduct a full inquiry before making a factual determination of an obligor's true earning capacity. We bear in mind that the late Honorable Vincent A. Cirillo, former President Judge of the Superior Court, astutely pointed out in his dissent in *Akers,* "A person's ability to pay support should be calculated only from his or her earning capacity at one full-time job. . . . The court could not order [Husband] to work a second job initially and it should not be able to force him to continue that employment once he had decided that the second job no longer profits him, financially or otherwise." *Akers, supra* at 272. Thus had the issue been preserved in *Akers,* we suggest that there may have been a different result.

¶ 14 Accordingly, we conclude, in the absence of adequate questioning by counsel, the hearing officer should have questioned Husband regarding the relevant factors relating to his earning capacity. *See Gephart v. Gephart,* 764 A.2d 613, 616 (Pa.Super.2000) (where the record was undeveloped as to the factors related to a fair determination of the obligor's true earning capacity, the case was remanded because it was the hearing officer's duty to inquire into them in order to make a fair award). Because the record is devoid of any inquiry into the relevant factors necessary to establish Husband's realistic earning capacity we must vacate the trial court's order and remand for a full evidentiary hearing to determine Husband's earning capacity.[1] *Gephart, supra.*

¶ 15 Order vacated. Case remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.

---

1. Inasmuch as the record before the hearing officer is also devoid of any discussion of the multi-family analysis required by Pa.R.Civ.P. 1910.16–7, we direct the trial court to inquire into this issue on remand as well.