J-A25017-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RONDA D. BLYSTONE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RUSSELL B. BLYSTONE, III | : | |
| | : | |
| Appellant | : | No. 461 WDA 2021 |

Appeal from the Order Entered March 15, 2021
In the Court of Common Pleas of Westmoreland County
Domestic Relations at No(s): 1359 DR 2019

BEFORE: KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.:                    **FILED: APRIL 20, 2022**

Appellant, Russell B. Blystone, III ("Father"), appeals from the order entered in the Westmoreland County Court of Common Pleas, requiring him to pay Appellee, Ronda D. Blystone ("Mother"), $100.00/month in child support for the parties' minor daughter, R.B. ("Child") (born in November 2006). We affirm.

The relevant facts and procedural history of this case are as follows. The parties married in 2006, separated in 2008, and divorced in 2011. They are the biological parents of Child. On October 15, 2019, Mother filed a complaint for child support. The matter came before a hearing officer on September 23, 2020. On September 28, 2020, the hearing officer issued the

_____

[*] Retired Senior Judge assigned to the Superior Court.

following findings of fact and conclusions of law:

## Findings of Fact

1.  [Mother] and [Father] were the only two witnesses to testify.

2.  The summary of [Mother's] testimony is as follows:

    a.    …Mother is 55 years old and resides in Leechburg, Pennsylvania with her [m]other, [R.S.].

    b.    Mother and Father have 50/50 equal custody of the minor child…age 13, pursuant to a Custody Order of Court entered in 2013.  The parties share physical custody on a week-on/week-off basis.

    c.    The parties were married in 2006, separated in 2008, and were divorced on September 15, 2011.

    d.    Mother graduated high school in 1983 and attended 9 months of school to become a medical assistant. Mother obtained a certificate but did not continue to renew her certificate over the years.

    e.    Mother worked at McDonalds for over 25 years. She stopped working when the minor child was born. Mother stated that, while she worked at McDonalds, she also worked on a part-time basis for 2 days per week as a medical assistant for a period of time.

    f.    Mother previously worked at the Appleseed Learning Center in Leechburg, Pennsylvania, in the childcare field for approximately one (1) year.  Mother stated that she also worked for approximately one (1) year doing cosmetology after she obtained a license.

    g.    The minor child…was born with Down's Syndrome and has had numerous surgeries over the years, but is considered to be in good health currently.  [Child] has medical appointments periodically for various conditions and issues.  [Child] no longer wears orthotics or braces and only wears insoles in her shoes.

h. [Child] is enrolled in 8th grade in Kiski Area Intermediate School and has an I.E.P. [Child] attends life skills classes four (4) days a week, currently, and has one day of on-line classes per week.

i. Pursuant to an Order of Court dated March 12, 2013, Mother is solely responsible for scheduling the child's doctor, dental, and medical appointments. Both parents typically attend the child's medical appointments.

j. Mother is not currently employed.

k. Beginning in August 2020, Mother began receiving food stamps for herself and the minor child in the amount of approximately $300.00 per month.

l. Mother has health insurance (UPMC for You) for herself and the minor child through the state at no cost to Mother.

m. According to Mother, prior to August of 2019, the minor child received Supplemental Security Income (SSI) of approximately $524.34 per month.

n. Due to Father's Social Security Disability[,] the minor child receives a derivative benefit from Social Security every month. This began in August of 2019.

o. For approximately two months, (August and September of 2019), Mother had been designated the representative payee for the child and received one or two Social Security payments of $973.00 that were directly deposited into her checking account.

p. Mother testified that ICCAP, or the Indiana County Community Action Program, is now the payee for the minor child's Social Security derivative benefit. This began in October 2019. Mother states that she has no idea how ICCAP became involved in her child's Social Security case and she has never received any documents or statements from ICCAP.

q. Mother stated that in October 2019, she received a payment from ICCAP in the amount of $415.00 for the child.

It is noted that Mother and Father each received a derivative payment for the child in the amount of $415.00 per month starting in October of 2019.

r.     As of January 2020, Mother and Father each receive a derivative benefit for the child in the amount of $422.00 per month.

s.     Mother has not received any paperwork directly from ICCAP. Mother believes that the Social Security Office sent her mail to Father's address and has been unable to straighten it out.

t.     Mother filed income taxes for 2019 because she cashed in some bonds that were under $1,000.00. Mother did not claim the child tax credit for [Child] and indicates that Maternal Grandmother has taken the child tax credit for the child for the past several years on her income tax return. Prior to this year, Mother had not filed income taxes since 2010.

u.     Mother stated that she is not employed currently as she is busy with her daughter and helps her with her schooling. Mother stated that since 2010, she has applied for approximately ten (10) different jobs but never got calls back. Several years ago, Mother applied for a job in a store, but did not obtain the job.

v.     Mother believes that if she tried to work at McDonalds again, she would have to work around her custody schedule for the child.

w.     Mother received a stimulus check in 2020 in the amount of $1,200.00. Mother stated that she was unaware of whether Maternal Grandmother received a stimulus check for the child.

x.     Mother confirmed on cross-examination that she received approximately $10,000.00 in August 2019 pursuant to the August 16, 2019 Order of Court in the parties' previous support case [which was ultimately dismissed by a consent order entered by the parties]. Mother spent the money on games and clothes for the child and has no money remaining. Mother testified that when

she needs money, Maternal Grandmother gives her money and covers all of her expenses for herself and the child.

y.    Mother stated that she did not receive any child support for approximately three (3) years, until she received $10,000.00 in August 2019. Mother stated that for three (3) years, Maternal Grandmother paid for all of the child's expenses. Mother has no savings.

z.    On cross-examination, Mother stated that she never received any payment from the Social Security Office in the amount of $7,173.33. Mother was made aware from her attorney at some point of this amount possibly owed to her by Social Security, but [M]other did not contact Social Security directly to investigate why she didn't receive said amount.

3. The summary of [Father's] testimony is as follows:

a.    …Father is 52 years old and resides in Apollo, Pennsylvania. Father owns his home and his grandmother, [J.B.], age 96, resides with him.[1]

b.    Father graduated high school and worked at Ross Auto Body for 15 years until approximately 2012, when he suffered the first of two strokes. Father's job involved auto mechanics and detail work. Father had prior jobs in woodworking and in the tool and die industry. Father was laid off in 2012. At that time, his earnings were $60,000.00 annually.

c.    Father is not currently employed. Father has not been employed since 2016. Father had a stroke in 2012 and a second stroke in 2015. Father states that he is totally disabled and unable to work. Father has partial paralysis on his left side and congenital degenerative disc in his mid to lower back as well as various other ailments.

d.    Father receives Social Security Disability benefits in the amount of $1,833.00 per month. Father confirmed that Social Security has deemed his date of disability to be

---

[1] The record indicates that Father's grandmother has since passed away.

February 26, 2016. While he was awaiting a determination for his Social Security Disability, he received cash assistance and food stamps for himself. These benefits stopped when he began receiving Social Security Disability.

e. Father's health insurance is through Medicare and $144.60/month is deducted from his Social Security Disability benefit.

f. Father also receives a derivative benefit from ICCAP for the minor child in the amount of $422.00 per month.

g. Father indicated that Mother was the payee for the child's benefit initially. Father went to the Social Security Office and requested to become the representative payee for the child. The Social Security Office asked him a series of questions at this meeting and informed him that they were going to conduct an investigation. Father believes that the investigation was because Mother should have been giving him half of the child's Social Security SSI payment retroactive to February 2013.

h. Thereafter, [F]ather was informed by the Social Security Officer that they were going to utilize an independent entity, ICCAP as the representative payee for the minor child. Father received a telephone call from ICCAP and later signed the paperwork to approve ICCAP as the child's representative payee. Father confirmed that ICCAP deposits $100.00 per month for the child into a savings account and charges a $44.00 monthly service fee.

i. Father does not have any health insurance cards through UPMC for the child.

j. Father attends all of the minor child's medical appointments. Father is willing to have the appointments scheduled during his periods of custody, however, Mother typically schedules the appointments during her periods of physical custody. Father stated that the child is doing well and is in good health and there are some months where the child has no medical appointments. She is not in need of any surgery and has no other medical needs currently.

k. The child has weekly therapy services including physical therapy, speech and occupational therapy. All therapies occur in the school setting.

l. On cross-examination, Father confirmed that he requested to be the representative payee for the child's derivative check at the Social Security Office and likely set into motion the investigation that resulted in choosing ICCAP to be the representative payee for the child.

m. Father confirmed that $100.00 per month is placed into a savings account for the minor child. Father is unable to access said account.

n. On cross-examination, Father denied working on any vehicles since 2016. Further, Father denied working on his own vehicle doing any oil changes or brake work.

o. On cross-examination, Father confirmed that he has not applied for any jobs and has not worked since he had his second stroke. Father stated that he doesn't do very much other than household chores and he is able to mow his lawn with his tractor. Father has a valid Pennsylvania Driver's License and has no restrictions in operating a motor vehicle. Father owns a vehicle and has no car payment, but pays for car insurance.

p. On cross-examination, Father confirmed that he added himself to his grandmother's checking account in January 2019 at Apollo Trust Company. This was due to his Grandmother's dementia. He has not had a checking account or bank account for many years. Father testified that for many years (2014-2019), his family members paid his bills, including his mother, sister and grandmother. Father testified that his grandmother paid the insurance for his vehicle and paid electric and gas for the home. Father used food stamps and assistance for his expenses, including gas money. Father stated that he now pays his bills, including gas, electric, water, sewage, cable and garbage bills by paying the majority of his bills in cash. Father also uses Western Union to pay bills or uses a bank debit card or a check. Father stated that he got in the habit of doing this and he likes to know that his bills are fully paid by using cash.

q.      Father confirmed that the bank account at Apollo Trust Company contained his own money, the child's money and his grandmother's money.  Father stated that the bills and expenses vary each month and cover all three (3) individuals.

r.      Father did receive a stimulus check in 2020 in the amount of $1,200.00, but did not receive a stimulus check for the minor child.

s.      Father has not filed taxes since 2015, per the advice of his accountant.

**Legal Conclusions**

*      *      *

8. The Hearing Officer has reviewed [M]other's testimony. Based on Mother's age, health and job history, the Hearing Officer finds that it is reasonable and appropriate to impute [M]other with part-time [earning capacity] for 20 hours per week at $10.00 per hour.  Mother also receives $422.00 per month for the child's Social Security derivative benefits. Although Mother's counsel argued that the involvement of ICCAP necessitated a deduction of $44.00 per month in fees and $100.00 per month to a savings account for the child, which should be considered in the support calculation, the Hearing Officer is not persuaded by this argument and notes that neither party reported filing an appeal to the decision made by the Social Security office to utilize ICCAP as the representative payee for the minor child.

9. The Hearing Officer finds that, based upon Mother's age, health and job history, Mother's net monthly income is determined to be $1,222.00.

10. Based upon Father's Notice of Decision made by the Social Security Administration, Father is deemed disabled and unable to work.  Father receives Social Security disability payments of $1,833.00 per month. The Hearing Officer accepts the findings of the Social Security Administration and does not find it reasonable or appropriate to impute any additional wages or earning

- 8 -

capacity for [F]ather, based upon his age, health and job history.

11. Father also receives $422.00 per month for the child's Social Security derivative benefits. Accordingly, the Hearing Officer finds that Father's net monthly income is determined to be $2,255.00.

12. The Hearing Officer has relied upon Pa.R.C.P. 1910.16-2(b)(2)(i)(A)(I-IV) in calculating the monthly child support obligation in this case, and has utilized a Guideline calculator spreadsheet, noting that [F]ather is the obligor due to his higher monthly net income, since the parties have equally shared physical custody. *See also* Pa.R.C.P. 1910.16-2(b)(2)(i)(A)[-](E).

13. In accordance with the Pennsylvania Support Guidelines, and effective October 11, 2019, [Father] shall pay $100.00 per month for the support of the minor child [(rounded up from $97.45)], plus $20.00 per month toward arrears. The unreimbursed medical expenses are to be paid as follows: 65% by [Father] and 35% by [Mother].

(Hearing Officer's Findings of Fact/Conclusions of Law, 9/28/20, at 1-8; 10-11) (most internal citations and footnotes omitted).

Father timely filed exceptions to the hearing officer's recommendation on October 27, 2020, and Mother filed cross-exceptions on November 20, 2020. The court held a hearing on the parties' exceptions on March 4, 2021. On March 15, 2021, the court denied Father's exceptions and Mother's cross-exceptions, and ordered that the September 28, 2020 order remain in effect. Father timely filed a notice of appeal on April 6, 2021. On April 30, 2021, the court ordered Father to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Father timely complied on May 20, 2021.

Father raises six issues for our review:

Whether the trial court erred in refusing to calculate the support obligation based upon the formula set forth at Pa.R.C.P. 1910.16-4(a)(2), Part II(11)(a)-(f) and further discussed at Pa.R.C.P. 1910.16-4(c)(1)-(2), and alternatively, if Pa.R.C.P. 1910.16-4(A)(2), Part II(A)-(F) is read as excluding parties receiving social security benefits, then the law is unconstitutional as applied to the present case.

Whether the trial court erred in imputing [Mother] an income of $10.00/hour at 20 hours per week where the evidence clearly indicates that [Mother] can work full time at a higher rate of pay based on twenty-five years of experience in the food industry, willful refusal to obtain gainful employment over ten years, and the minimal needs of the minor child.

Whether the trial court erred in failing or refusing to amortize or otherwise analyze the impact of [Mother's] pending receipt of the child's social security derivative benefits in the amount of $7,173.33 as part of the support determination.

Whether the trial court erred in failing or refusing to consider the impact of an overpayment in support to [Mother], where [Mother] previously received Social Security Income (SSI) on behalf of the child and which was recouped by [Mother] in the amount of $32,999.00 when awarded benefits as a result of [Father's] receipt of social security disability benefits.

Whether the trial court erred in failing or refusing to apply a downward deviation in support owed by [Father] where [Mother] allowed the maternal grandmother to claim the minor child on her tax returns for many prior years, resulting in maternal grandmother's receipt of the federal child tax credit and pandemic dependent stimulus checks.

Whether the trial court erred in refusing to find that the presumed support obligation of [Father] was unjust or inappropriate under Pa.R.C.P. 1910.16-1(d) after considering all relevant evidence as a whole.

- 10 -

(Father's Brief at 4-5) (internal footnotes omitted).

Our standard of review regarding child support orders is well settled:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*C.H.Z. v. A.J.Y.*, 262 A.3d 604, 607 (Pa.Super. 2021) (internal citation omitted). "To the extent the issues involve interpretation and application of the Rules of Civil Procedure, which are questions of law, we employ a *de novo* standard of review and plenary scope of review." *Id.*

In his first issue, Father argues that the trial court failed to utilize the appropriate support obligation calculation by not applying the shared custody offset formula set forth in Pa.R.C.P. 1910.16-4(a)(2), Part II(a)-(f), as mandated at Pa.R.C.P. 1910.16-4(c)(1)-(2). Father asserts the court did not analyze the rebuttable presumption regarding a support reduction set forth in Pa.R.C.P. 1910.16-4(c)(1), thereby failing to conduct the shared custody analysis of the support obligation as required by the law and facts of the case. Essentially, Father claims the relevant rules of civil procedure mandate that he receives a reduction in his support obligation because he shares equal

custody of Child with Mother.

Alternatively, Father contends that if Rule 1910.16-4(a)(2), Part II(11)(a)-(f) is read as excluding parties receiving Social Security benefits from obtaining the shared custody offset, then the law is unconstitutional as applied to Father. Father maintains his equal protection rights are being violated because he is being treated differently than other obligor parents with shared custody of their children—namely, by not receiving a downward shared custody deviation solely based on his status as a person qualified to receive Social Security Disability benefits. Father contends there is no rational relationship to a government interest in denying an obligor parent with shared custody a downward child support deviation simply because he or she receives social security disability payments, as opposed to an obligor parent with shared custody who does not receive disability payments. Father suggests Rules 1910.16-4(c)(1) and 1910.16-2(b)(2)(i)(A)(I-V) are unconstitutional as applied in this case, and this Court must reverse and remand for recalculation of the support order. We disagree.

Pennsylvania Rule of Civil Procedure 1910.16-4 provides, in pertinent part:

> **Rule 1910.16-4. Support Guidelines. Calculation of Support Obligation, Formula**
>
> (a) The trier-of-fact shall use either the subdivision (1) or subdivision (2) formula to calculate the obligor's share of basic child support, either from the schedule in Pa.R.C.P. No. 1910.16-3 or the formula in Pa.R.C.P. No. 1910.16-3.1(a), as well as spousal support and alimony *pendente lite*

obligations. In high-income cases, the trier-of-fact shall use either the subdivision (1)(Part B) or subdivision (2)(Part IV) formula, as appropriate, as a preliminary analysis in the calculation of spousal support or alimony *pendente lite* obligations.

(1) **The formula in Parts A through E is for an order entered on or after January 1, 2019**, or for a modification of an order entered before January 1, 2019 that includes spousal support or alimony *pendente lite* in which the amendments to the Internal Revenue Code made by Section 11051 of the Tax Cuts and Jobs Act of 2017 (Pub. L. No. 115-97) expressly apply.

\* \* \*

(2) **The formula in Parts I through IV is for a modification of an order entered before January 1, 2019** that includes spousal support or alimony *pendente lite*.

\* \* \*

**(c) Substantial or Shared Physical Custody.**

(1) When the children spend 40% or more of their time during the year with the obligor, a rebuttable presumption arises that the obligor is entitled to a reduction in the basic support obligation to reflect this time. This rebuttable presumption also applies in high income cases decided pursuant to Rule 1910.16-3.1. Except as provided in subsection (2) below, the reduction shall be calculated pursuant to the formula set forth in Part II of subdivision (a) of this rule. For purposes of this provision, the time spent with the children shall be determined by the number of overnights they spend during the year with the obligor.

\* \* \*

(2) Without regard to which parent initiated the support action, when the children spend equal time with their parents, the Part II formula cannot be applied unless the obligor is the parent with the higher income. An order shall not be entered requiring the parent with the lower income

to pay basic child support to the parent with the higher income. However, this subdivision shall not preclude the entry of an order requiring the parent with less income to contribute to additional expenses pursuant to Pa.R.C.P. No. 1910.16-6. Based upon the evidence presented, the trier of fact may enter an order against either party without regard to which party initiated the action. If the parties share custody equally and the support calculation results in the obligee receiving a larger share of the parties' combined income, then the court shall adjust the support obligation so that the combined monthly net income is allocated equally between the two households. In those cases, spousal support or alimony *pendente lite* shall not be awarded.

\* \* \*

Pa.R.C.P. 1910.16-4(a)(1)-(2), (c)(1)-(2) (effective to December 31, 2021)

(emphasis added) (formulas set forth in Rule omitted).

Additionally, Pennsylvania Rule of Civil Procedure 1910.16-2 provides as follows:

**Rule 1910.16-2. Support Guidelines. Calculation of Monthly Net Income**

\* \* \*

**(b) Treatment of Public Assistance, SSI Benefits, Social Security Payments to a Child Due to a Parent's Death, Disability or Retirement and Foster Care Payments.**

\* \* \*

(2) *Child's Social Security Derivative Benefits*.

(i) If a child is receiving Social Security derivative benefits due to a parent's retirement or disability:

(A) The trier-of-fact shall determine the basic child support amount as follows:

(I) add the child's benefit to the monthly net income of the party who receives the child's benefit;

(II) calculate the parties' combined monthly net income, including the child's benefit;

(III) determine the basic child support amount set forth in the Pa.R.C.P. No. 1910.16-3 schedule; and

(IV) apportion the basic child support amount between the parties based on the party's percentage of the combined monthly net income.

(B) If the obligee receives the child's benefit, the trier-of-fact shall deduct the child's benefit from the basic support obligation of the party whose retirement or disability created the child's benefit.

(C) If the obligor receives the child's benefit, the trier-of-fact shall not deduct the child's benefit from the obligor's basic support obligation, even if the obligor's retirement or disability created the child's benefit. To illustrate for the parties the impact of the obligor receiving the benefit instead of the obligee, the domestic relations section shall provide the parties with two calculations theoretically assigning the benefit to each household.

(D) The trier-of-fact shall allocate the additional expenses in Pa.R.C.P. No. 1910.16-6 based on the parties' monthly net incomes without considering the child's benefit.

**(E) In equally shared custody cases, the party with the higher monthly net income, excluding the child's benefit, is the obligor.**

\* \* \*

Pa.R.C.P. 1910.16-2(b)(2)(i) (effective to December 31, 2021) (emphasis added).

Instantly, the trial court initially noted that the formula set forth in Rule 1910.16-4(a)(2) Part II(11)(a)-(f) (detailing formula for substantial or shared

physical custody adjustment, if applicable, and referencing subdivision (c) of Rule), was inapplicable to this case because Mother filed the child support complaint on October 11, 2019, which is after January 1, 2019. (**See** Trial Court Opinion, filed June 8, 2021, at 2). The court went on to state: "It is completely irrelevant that the parties were previously involved in a child support action prior to January 1, 2019 because that action was dismissed and the case was closed, by agreement, through the August 16, 2019, Consent Order of Court." (**Id.** at 2-3) (footnote omitted).

We see no error in the trial court's application of Rule 1910.16-4. **See C.H.Z., supra**. The Rule plainly states: "The formula in Parts I through IV is for a modification of an order entered **before** January 1, 2019[.]" Pa.R.C.P. 1910.16-4(a)(2) (emphasis added). Thus, we agree with the trial court that the formula Father sought to apply in this case set forth in Part II(11)(a)-(f) was not relevant here, where the support order at issue would be entered after January 1, 2019.

The trial court explained that the hearing officer utilized Rule 1910.16-2(b) to calculate the child support obligation where Child was receiving support benefits due to a parent's disability, and "followed the step-by-step calculations in determining [Father's] child support obligation meticulously." (Trial Court Opinion at 3). The court noted:

> And, although [Father] would argue that an additional step must be added to take into consideration the parties' shared physical custody schedule [and apply a reduction as a result], the Rule simply does not include such a step.

Moreover, this Rule is not silent on the issue of shared physical custody because the Rule goes on to state: "(E) In equally shared custody cases, the party with the higher monthly net income, excluding the child's benefit is the obligor." Therefore, the [c]ourt can reliably presume that if the Legislature had intended a further deviation for shared physical custody cases, [it] would have included an additional step in the support calculation in that subsection.

(*Id.* at 3-4). We see no error in the trial court's analysis of Rule 1910.16-2. *See C.H.Z., supra*. As the trial court correctly observed, Rule 1910.16-2(b)(2)(i)(E) addresses how to calculate the child support obligation in an equally shared custody case involving a child who receives social security derivative benefits, and the Rule does not mention an additional reduction or deviation that would apply to Father under those circumstances. *See* Pa.R.C.P. 1910.16-2(b)(2)(i)(E).

Regarding Father's alternative arguments that the relevant rules of civil procedure are unconstitutional as applied to him, Mother notes that "Father presents no evidence as to why the Pennsylvania Legislature's decision to exclude from downward deviation the receipt of [Social Security Disability] SSD benefits is not rationally related to a legitimate government interest." (Mother's Brief at 11-12). Mother further claims: "Father's blanket claims that no rational basis exists [are] not sufficient." (*Id.* at 12). We agree with Mother that Father's bald assertions of no rational basis are insufficient to warrant appellate relief. *See Dockery v. Thomas Jefferson University Hospitals, Inc.*, 253 A.3d 716, 722 (Pa.Super. 2021) (holding appellant did not properly mount constitutional attack against certain Rule of Civil

Procedure; notably, appellant failed to consider myriad of other reasons that Supreme Court may have considered when it promulgated rule; "And we may not pursue this inquiry for her, lest we risk developing the constitutional claim on her behalf"; in light of undeveloped brief, we cannot say with any certainty whether challenged rule violates or comports with Equal Protection Clauses; thus, appellant's constitutional challenge affords her no relief).[2]

In his second issue, Father argues the trial court did not properly consider the evidence of Mother's earning capacity when the court imputed an income to Mother of only $10.00/hour at 20 hours per week. Father asserts the evidence shows that Mother has 25 years of experience in the restaurant industry and Mother failed to make a good faith effort to seek employment. Father claims that the parties have had shared custody of Child since 2013, and Child has no special needs requiring strenuous or time-consuming care by Mother. Father suggests that he or Maternal Grandmother could care for Child while Mother is working. Father submits that Mother is capable of

---

[2] Further, to the extent Father argues the rules of civil procedure are facially unconstitutional (as opposed to as applied in this case), then any such challenge is waived, where nothing in the record indicates that Father notified the Attorney General of such an attack pursuant to Pa.R.C.P. 235 and Pa.R.A.P. 521. **See Fotopoulos v. Fotopoulos**, 185 A.3d 1047 (Pa.Super. 2018) (explaining that where party purports to challenge constitutionality of rule or statute, notice must be given to Office of Attorney General of Commonwealth; where there is no indication such notice was given, constitutionality claim is waived). **Compare Kepple v. Fairman Drilling Co.**, 532 Pa. 304, 313 n.3, 615 A.2d 1298, 1303 n.3 (1992) (noting that notice to Attorney General is not required if appellant's argument is confined only to application and not attack on constitutionality of statute on its face).

earning $15.00/hour at 40 hours per week in the food service industry, and the court failed to impute this higher earning capacity to Mother. We disagree.

This Court has explained that "[e]arning capacity is defined as the amount that a person realistically could earn under the circumstances, considering [her] age, health, mental and physical condition, training, and earnings history." **Woskob v. Woskob**, 843 A.2d 1247, 1251 (Pa.Super. 2004). **See also Haselrig v. Haselrig**, 840 A.2d 338 (Pa.Super. 2003) (stating earning capacity is not amount which person could theoretically earn but amount which person could realistically earn under relevant circumstances).

Instantly, the trial court explained:

> The Hearing Officer took into consideration [Mother's] age, health and job history when imputing her net monthly income. [Mother] is 55 years old and resides with her mother. [Mother] graduated high school in 1983 and obtained a medical assistant certification that, over the years, she did not renew. [Mother] worked at McDonalds for twenty-five years prior to the birth of the parties' child and worked minimally for several years thereafter. [Mother] is currently not employed. The Hearing Officer found [Mother] credible and the imputation of [Mother's] current income is reasonable and supported by the evidence. [Father] failed to support his argument and presented no evidence that at any time has [Mother] ever been found to have higher actual earnings or a higher earning capacity.

(Trial Court Opinion at 6).

Our review of the record confirms that the hearing officer and trial court considered the relevant factors when assigning Mother an earning capacity.

*See Woskob, supra*. Although Father claims the court should have imputed a $15.00/hour, 40 hour/week earning capacity to Mother, he presented no data to support those figures. In the absence of any evidence showing Mother could **realistically** (not theoretically) earn more than $10.00/hour, 20 hours/week, we see no abuse of discretion with the court's analysis. *See C.H.Z., supra*. *See also Haselrig, supra*.

In his remaining issues combined, Father argues the court failed to consider the "clear and convincing" evidence of Mother's pending receipt of Child's Social Security derivative benefits in the amount of $7,173.33. Father insists that a letter from the Social Security Administration demonstrated this amount was owed to Mother, but Mother made no effort to inquire about its whereabouts. Father asserts that the court should have utilized this amount in providing a downward deviation or other offset to Father pursuant to the deviation factor analysis in Rule 1910.16-5. Additionally, Father maintains the court failed to consider a substantial overpayment of Child's Social Security Income benefits to Mother, wherein Mother received $32,999.00 in Child's benefits and then received an offset of that same amount from the full amount payable in Social Security Disability benefits. Father contends this significant monetary asset is properly considered in analyzing Mother's assets and providing a downward deviation to Father under Rule 1910.16-5.

Further, Father insists the court failed to apply a deviation to Father where the uncontroverted evidence shows that Maternal Grandmother, with

whom Mother resides, has claimed Child on her tax returns for several years and has therefore received the benefit of the child tax credit and dependent pandemic stimulus payments. Father claims this consistent flow of income to Mother's household should be considered in assessing a downward deviation to Father. Under these circumstances, Father submits that the support order was unjust and/or inappropriate, and this Court must grant appropriate relief. We disagree.

Pennsylvania Rule of Civil Procedure 1910.16-5 provides:

**Rule 1910.16-5. Support Guidelines. Deviation**

**(a) Deviation**. If the amount of support deviates from the amount of support determined by the guidelines, the trier of fact shall specify, in writing or on the record, the guideline amount of support, and the reasons for, and findings of fact justifying, the amount of the deviation.

\* \* \*

**(b) Factors**. In deciding whether to deviate from the amount of support determined by the guidelines, the trier or fact shall consider:

(1) unusual needs and unusual fixed obligations;

(2) a party's other support obligations;

(3) other household income;

(4) ages of the children;

(5) the relative assets and liabilities of the parties;

(6) medical expenses not covered by insurance;

(7) standard of living of the parties and their children;

(8) in a spousal support or alimony *pendente lite* case, the duration of the marriage from the date of marriage to the date of final separation; and

(9) other relevant and appropriate factors, including the best interests of the child or children.

Pa.R.C.P. 1910.16-5 (effective until December 31, 2021).

Instantly, the trial court addressed these claims as follows:

[Father] argues that the Hearing Officer erred in failing to consider the possibility that [Mother] "might" have been entitled to receive Social Security benefits in the amount of $7,173.33 in August 2019. However, [Father] merely speculated that [Mother] might have been entitled to receive this sum of money, and never proved that [Mother], in fact, did receive any lump sum payment in this amount. The [c]ourt simply cannot justify addressing income that has never been proven to have been received by [Mother]. Furthermore, the [c]ourt does not agree with [Father] that somehow the burden shifts to [Mother] having to prove she did NOT get the money when she testified under oath...that she did not receive the money. Lastly, the [c]ourt notes that [Father] does not argue that [Mother] received this money during the pendency of this action, but prior to this support action being filed in 2019.

\* \* \*

[Father] asks the [c]ourt to address [Mother's] receipt of SSI for the minor child dating as far back as possibly the child's birth and for a time period prior to the initiation of the current support action. [Father] failed to cite any legal justification for the [c]ourt to consider this factor, as this case commenced in 2019, it is irrelevant.

\* \* \*

[Father also] failed to provide any legal justification to allow the [c]ourt to consider any benefits the maternal grandmother may or may not receive as a result of claiming the minor child [for tax purposes]. Moreover, there was no evidence, whatsoever, of the exact amount of any alleged

benefit received by maternal grandmother, if any. Again, the [c]ourt simply cannot justify addressing income that has never been proven to have been received by [Mother].

\* \* \*

To justify [Father's] argument that he should have no child support obligation, he references the above lump sums of money that were never proven to be received by [Mother], his belief that [Mother's] income was inaccurately imputed, and the parties' 50/50 shared physical custody schedule. Based on the previous discussion wherein [Father's] arguments failed; hereto, [Father's] arguments must fail. The [c]ourt does not find the current child support obligation to be unjust or inappropriate. Rather, due to the special needs of the minor child, the [c]ourt finds the order to be just and fair.

The [c]ourt notes that it would appear that the crux of [Father's] overall position is that because the parties share legal and physical custody equally, that since [Father] receives Social Security Disability income, and that because the minor child is entitled to a derivative benefit based on [Father's] disability, he should not have to pay child support. This position is simply not supported by the child support guidelines as indicated by the above analysis. And although the guidelines do not specially address a scenario where the minor child's derivative benefit is distributed by a 3rd party payee equally to both parents, the guidelines provide sufficient guidance in calculating [Father's] child support obligation.

(Trial Court Opinion at 6-9). We see no reason to disrupt the court's analysis.

Although Father contends that he was entitled to a downward support deviation where Mother had "other income in the household" by way of Maternal Grandmother, and additional "assets" in the form of payments Father alleged she had received (*see* Pa.R.C.P. 1910.16-5(b)(3) and (5)), we see no abuse of discretion in the trial court's decision not to apply any such deviation,

based on the reasons stated in the court's opinion. ***See C.H.Z., supra***. To the extent Father suggests Mother's testimony before the hearing officer was incredible, "we must remain cognizant that a hearing officer's credibility determination must be accorded great weight." ***Kraisinger v. Kraisinger***, 928 A.2d 333, 344 (Pa.Super. 2007). Under the circumstances of this case, we agree with the trial court that Father's child support obligation of $100.00/month was not unjust or inappropriate. ***See*** Pa.R.C.P. 1910.16-1(d)(1) (stating that if trier-of-fact determines that party has duty to pay support, there is rebuttable presumption that guideline-calculated support amount is correct support amount; presumption is rebutted only if trier-of-fact concludes in written findings or states on record that guideline support amount is unjust or inappropriate). Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/20/2022